Filed 7/29/13  P. v. Scott CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LAQUAIN LARRY SCOTT,<br><br>        Defendant and Appellant. | A136115<br><br>(San Francisco County<br>Super. Ct. Nos. 106490, 1952523) |

Appellant Laquain Larry Scott appeals from a jury determination that he is a sexually violent predator (SVP) under the Sexually Violent Predator Act (SVPA or Act).[1] He contends that the Act violates the equal protection clause and that the use of a standard jury instruction defining SVPs was improper and violated his rights to due process.  We disagree and affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

Scott was convicted several times of sexually violent offenses spanning a period of 26 years.  The convictions date back to 1968, when Scott was 17.  He was 61 at the time of the trial on his current SVPA commitment, which occurred in 2012.

---

[1] Welfare and Institutions Code, § 6600 et sequitur.

All statutory references are to the Welfare and Institutions Code unless otherwise specified.

Scott had been previously committed as an SVP in 2006. At that time, the trial court committed him for a term of two years to Coalinga State Hospital, and this court affirmed in a nonpublished opinion. (*People v. Scott* (Aug. 29, 2007, A113728).)

Following Scott's 2006 commitment, the SVPA was amended to modify the terms under which SVPs are committed and released. (*People v. McKee* (2010) 47 Cal.4th 1172, 1183 (*McKee I*).) Under the earlier version, a person found to be an SVP was given an involuntary two-year civil commitment. (*Id.* at p. 1185.) That two-year period could be extended only if a new petition was filed requesting a successive two-year commitment and the People proved beyond a reasonable doubt that the person remained an SVP. (*Ibid.*) Under the current version, a person found to be an SVP is given an *indeterminate* commitment to the custody of the Department of State Hospitals. (§ 6604; *McKee I* at pp. 1186-1187.)

In February 2008, after the Act was amended, the People filed a petition seeking an indefinite term of commitment for Scott. The trial court found probable cause, and a trial ensued. At trial, four psychologists who had evaluated Scott testified. All four diagnosed Scott with paraphilia, which is a mental disorder within the meaning of the SVPA. One of the psychologists testified that Scott was likely to commit sexually violent predatory offenses in the future, while the other three testified that Scott was unlikely to do so because his advancing age and declining health placed him in a low- or moderate-risk category.

A jury found the petition declaring Scott an SVP to be true. The trial court committed Scott for an indefinite term and ordered that he be returned to Coalinga State Hospital. This timely appeal followed.

## II.
### DISCUSSION

*A. No Violation of Equal Protection Principles.*

Scott argues that the SVPA denies him equal protection of the law because SVPs are indefinitely committed while other classes of people subject to civil commitments are not. We disagree, and concur with our colleagues in Division Three that the recent case

of *People v. McKee* (2012) 207 Cal.App.4th 1325 (*McKee II*) is dispositive. (*People v. McKnight* (2012) 212 Cal.App.4th 860, 862.)

In *McKee I*, the California Supreme Court concluded that, for purposes of the equal protection clause, SVPs are similarly situated to two other classes of people subject to civil commitments: mentally disordered offenders and persons found not guilty by reason of insanity. (*McKee I*, *supra*, 47 Cal.4th at pp. 1203-1207.) After ruling that the classes are similarly situated, the court remanded the case for an evidentiary hearing to determine whether there were legitimate reasons to subject SVPs, but not the other classes, to indefinite commitments. (*Id.* at pp. 1208-1210.) On remand, and following a 21-day evidentiary hearing, the trial court concluded that the People had met their burden of justifying the disparate treatment. (*McKee II*, *supra*, 207 Cal.App.4th at pp. 1330, 1332.) The Fourth District Court of Appeal affirmed (*id.* at pp. 1348, 1350), and our Supreme Court denied McKee's petition for review on October 10, 2012 (S204503).

Scott argues at length that *McKee II* was incorrectly decided. But as the court explained in *People v. McKnight*, *supra*, 212 Cal.App.4th at pages 863-864, the Supreme Court transferred multiple " 'grant and hold' " cases under *McKee I* "to the Courts of Appeal with directions to vacate their prior opinions and suspend further proceedings until the *McKee I* remand proceedings were final, '*in order to avoid an unnecessary multiplicity of proceedings*.' [Citations.] On remand, *McKee II* concluded that differences between *SVPs as a class* and other offenders justify their different treatment under the Act. It is plain that *McKee II* is not to be restricted to Mr. McKee alone . . . , but rather its holding applies to the class of SVP's as a whole." (Original italics.) The Supreme Court denied review in *McKnight* on March 13, 2013 (S208182), and it has since denied review in other cases that also found *McKee II* to be dispositive on the equal protection issue. (*People v. McDonald* (2013) 214 Cal.App.4th 1367, 1371 [agreeing with *McKnight*], petn. review den. July 10, 2013, S210417; *People v. Landau* (2013) 214 Cal.App.4th 1, 48 [agreeing with *McKee II*'s reasoning and conclusion and noting that defendant made no showing he was able to introduce "any new or different evidence that would require a different result"], petn. review den. May 22, 2013, S209450;

*People v. McCloud* (2013) 213 Cal.App.4th 1076, 1079, petn. review den. May 22, 2013, S208845.)

Like the *McKnight* court, we agree with the Fourth District's equal protection analysis in *McKee II, supra*, 207 Cal.App.4th at pages 1339-1347, and we thus conclude that Scott's indeterminate recommitment under the SVPA does not violate his equal protection rights. (*People v. McKnight, supra*, 212 Cal.App.4th at p. 864.)

B. *No Instructional Error.*

Scott argues on appeal that his fundamental rights were violated when the jury was given the standard CALCRIM instruction on the requirements for finding a person to be an SVP.[2] These arguments were not raised below when the People asked for the instruction to be given, and we question whether they were properly preserved for appellate review even though respondent does not argue that they were forfeited. (*People v. Virgil* (2011) 51 Cal.4th 1210, 1260 [party's failure to object to jury instructions forfeits the claim on appeal].) Nevertheless, because Scott claims that he was excused from objecting below because the instruction affected his substantial rights (Pen. Code, § 1259) and to forestall any later claim brought in a habeas proceeding, we proceed to the merits and reject each of Scott's arguments in turn.

1. Instruction did not lower burden of proof.

Jurors were instructed under CALCRIM No. 3454A that the People were required to prove beyond a reasonable doubt that (1) Scott had a diagnosed mental disorder, (2) he was a danger to the health and safety of others as a result of that disorder because it was likely that he would engage in sexually violent predatory criminal behavior, and (3) *it*

---

[2] Some of Scott's arguments we address in this section are not new. The same attorney who represents Scott in this appeal raised almost identical claims of instructional error in appeal No. A131853 before Division One of this court (*People v. Atualevao* (Feb. 13, 2013) [nonpub. opn.]) and in appeal No. A124874 before Division Five of this court (*People v. Lowe* (Nov. 29, 2010, mod. Dec. 20, 2010) [nonpub. opn.]). Our colleagues rejected these arguments. On the court's own motion, we take judicial notice of the briefs and opinion in *Atualevao* and the opinion in *Lowe*. (Evid. Code §§ 451, subd. (a), 452, subd. (d), 459, subd. (a); *In re Luke L.* (1996) 44 Cal.App.4th 670, 674, fn. 3 [judicial notice of nonpublished opinion pursuant to Evid. Code, § 451, subd. (a)].)

*was necessary to keep him in custody in a secure facility to ensure the health and safety of others.*[3]

According to Scott, the third element's reference to the necessity of keeping the person in a secure facility "improperly and unnecessarily focus[ed] the jury's attention on the improper consideration of the consequences of its verdict." He claims that the language "effectively reverse[d] the burden of proof" because it "impress[ed] on the factfinder what is effectively a presumption of dangerousness, a presumption that work[ed] to [his] extreme prejudice . . . ." We conclude that there was no error. We agree with our colleagues in Division One, who considered an almost identical argument advanced by Scott's appellate attorney, that it is not reasonably likely that a jury would understand the instruction to mean that "a person must be committed unless they can ensure the safety of the community . . . effectively [creating] a presumption of dangerousness." (*People v. Atualevao*, *supra*, A131853, 2013 Cal. App. Unpub. LEXIS 1096 at p. *23.)

The third element's direction that the jury determine whether it is necessary for the person to be kept in a secure facility *increases* the prosecution's burden and was added to the form instruction to protect SVPs by guarding against unnecessarily prolonged custody. It must be given sua sponte in every case where evidence is presented that the person is amenable to voluntary treatment in the community because this evidence is relevant to whether the person is likely to engage in sexually violent behavior in the future. (*People v. Grassini* (2003) 113 Cal.App.4th 765, 776-778; 2 Judicial Council of Cal., Crim. Jury Instns. (Spring ed. 2013) Bench Notes to CALCRIM No. 3454A, p. 1039.) A suspected SVP may request instruction on this element where he acknowledges having a sexual or mental disorder but claims that he does not pose a

---

[3] The parties identify the instruction as CALCRIM No. 3454, which is to be given at trials on the initial SVP petition. The jury was in fact instructed with CALCRIM No. 3454A, which is given at trials on subsequent petitions. The two instructions are almost identical, except that No. 3454A omits the prosecution's burden to prove that the potential SVP has been convicted of committing sexually violent offenses against one or more victims.

5

danger to the community if released because he will undergo voluntary treatment. (*People v. McRoberts* (2009) 178 Cal.App.4th 1249, 1258.)

It is unclear why the third element was given in this case since there was little focus at trial on Scott's amenability to voluntary treatment and evidence was presented that previous treatment had been unsuccessful, Scott refused to participate in treatment in 2010, and one expert doubted Scott would undertake treatment in the community. But we nonetheless believe that there was no error in directing the jury to sustain the petition only if it found that it was "necessary to keep [Scott] in custody in a secure facility." One of Scott's main arguments at trial was that he was unlikely to reoffend in the community because of advancing age and deteriorating health. In closing argument, Scott's trial counsel pointedly argued that Scott no longer needed to be kept in a secure facility: "Is it necessary to keep him *in custody*? That's the issue after 12 years. That's the issue." (Italics added.) Directing the jury to sustain the petition only if it found that it was necessary to keep Scott in a secure facility was consistent with Scott's defense, which is probably why no objection was made to the instruction by Scott's trial counsel.

Furthermore, the third element's reference to Scott's status in a secure facility was directly related to the central purpose of the proceeding. In a series of cases, our Supreme Court has made it clear that the whole point of the SVPA is to determine whether a person should be committed in a secure facility. (*People v. Roberge* (2003) 29 Cal.4th 979, 988 [person is an SVP under § 6600, subd. (a) if there is substantial danger he or she will commit sexually violent crimes *if released from custody*]; *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 256 [although standard for probable cause finding does not expressly include reference to custody, issue is whether person likely to reoffend *without confinement and treatment*]; *People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 921 [purpose of SVPA is to protect public from group of persons who present high risk of reoffense if "not treated in a confined setting"].) Given these cases, we cannot conclude that the instruction's suggestion that Scott was in a secure facility amounted to error.

The cases upon which Scott relies were decided years before our Supreme Court's decisions in *Ghilotti*, *Cooley*, and *Roberge* clarified the relevant standards in making an SVP determination, and they are distinguishable in any event. *People v. Rains* (1999) 75 Cal.App.4th 1165 held that it was error, though harmless, for a prosecution expert to testify that if the jury found the appellant to be an SVP, he would " 'receive a civil commitment to a psychiatric facility and receive treatment there,' " and two experts testified briefly about the specific type of treatment he would be expected to receive. (*Id.* at p. 1171.) The court held that such evidence had no relevance to the issue of whether the appellant was likely to engage in sexually violent criminal behavior (§ 6600, subd. (a)), but that the admission of such testimony was harmless because it was relatively brief and the evidence against the appellant was strong. (*Rains* at p. 1170.) Here, by contrast, Scott points to no such objectionable trial testimony.

In *People v. Allen* (1973) 29 Cal.App.3d 932, the court held that it was reversible error to allow testimony and argument on the particular treatment an appellant would be compelled to receive at a state institution if the jury found that he was a mentally disordered sex offender. (*Id.* at pp. 934, 938-939.) The prosecutor informed jurors that such treatment would be beneficial to appellant and that appellant " 'need[ed] help' " (*id.* at p. 934), and the trial court also informed jurors of the specific treatment the appellant would receive. (*Id.* at pp. 934-935.) The appellate court reversed appellant's judgment of commitment, concluding that "[p]ermitting the jury to consider the alleged speculative benefits of involuntary treatment is to allow them to believe they are doing the individual a favor by helping him solve his problem rather than punishing him criminally." (*Id.* at pp. 938-939.) But as Scott acknowledges, the jury instruction in this case "made no reference to treatment and its affect [*sic*] upon appellant's likelihood of reoffense," meaning that there was little risk that jurors would find the SVP allegations against him true in order to do him a "favor," as was the concern in *Allen*.

And in *People v. Collins* (1992) 10 Cal.App.4th 690, a modified jury instruction, along with the jury verdict forms used, directed the jury to determine whether a mentally disordered offender would be hospitalized or released on parole, which impermissibly

suggested that the jury should weigh the potential effects of its finding. (*Id.* at pp. 693-696.) Here, Scott does not point to any objectionable testimony, argument, or verdict form regarding the specific disposition of his case, other than the general reference in the form jury instruction to the necessity for "custody in a secure facility."

We thus reject Scott's argument that the third element of the instruction given to the jury in his case lowered the prosecution's burden of proof. The same instruction specifically informed the jury that the People had the burden to prove their allegations "beyond a reasonable doubt." Jurors also were instructed under CALCRIM No. 219 that "[t]he fact that a petition to declare [Scott] a sexually violent predator has been filed is not evidence that the petition is true. You must not be biased against [Scott] just because the petition has been filed and this matter has been brought to trial. The Petitioner (People of the State of California) is required to prove the allegations of the petition are true beyond a reasonable doubt." Because we reject Scott's claim of instructional error, we need not reach his argument that he was prejudiced thereby.

2. Instruction did not violate due process.

Section 6600, subdivision (a) provides that an SVP is one who has a mental disorder that makes the person a danger to the health and safety of others "in that it is *likely* that he or she will engage in sexually violent criminal behavior." (Italics added.) In *People v. Roberge*, *supra*, 29 Cal.4th at page 988, our Supreme Court defined this term to mean that "the person is found to present a *substantial danger*, that is, a *serious and well-founded risk*, of committing such [sexually violent] crimes if released from custody." (Original italics.) Consistent with this holding, the jury was instructed in this case under CALCRIM No. 3454A that "[a] person is likely to engage in sexually violent predatory criminal behavior if there is a substantial danger, that is, a serious and well-founded risk that the person will engage in such conduct if released into the community. [¶] The likelihood that the person will engage in such conduct does not have to be greater than 50 percent."

Scott's appellate counsel first acknowledges, as he did in *People v. Lowe*, *supra*, No. A124874, that this court is bound by our Supreme Court's construction of the SVPA.

8

(*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)  He nonetheless argues, as he did in an identically worded passage in his *Lowe* briefing, that "[a]ccepting that this is what the Legislature intended the statute to mean, . . . the statute and [CALCRIM No. 3454A] based upon it are unconstitutional."  (*Lowe*, *supra*, 2010 Cal. App. Unpub. LEXIS 9419 at p. *14.)  Scott claims that the Act (and thus the form jury instruction upon which it is based) denies due process of law because it does not require the People to quantify a probability that a person will reoffend if not committed, but instead uses the vague and undefined terms " 'substantial,' " " 'serious,' " " 'well-founded,' " and " 'risk.' "

As our colleagues in Division Five observed in addressing this argument (*People v. Lowe*, *supra*, 2010 Cal. App. Unpub. LEXIS 9419 at pp. *14-19), our Supreme Court has previously rejected due process challenges to the SVPA, and the court also repeatedly has upheld the foregoing terms.  (E.g., *People v. Roberge*, *supra*, 29 Cal.4th at pp. 988-989; *People v. Superior Court (Ghilotti)*, *supra*, 27 Cal.4th at p. 924 [state has compelling interest in confining people who pose substantial danger of committing new crimes, even if risk cannot be assessed at greater than 50 percent]; *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1158, 1163 [SVPA establishes requisite link between impaired volitional control and danger posed to public to pass constitutional muster under U.S. Supreme Court precedent], relying on *Kansas v. Hendricks* (1997) 521 U.S. 346.)  Indeed, Scott acknowledges that the prosecutor in his closing argument relied on a definition of " 'likely' " that has been approved by both the Legislature and our Supreme Court.  We find no due process violation or instructional error.

Finally, we reject Scott's short, related argument that the SVPA is void for vagueness because "it leaves to the expert witnesses and to the jury the task of setting a threshold probability of reoffense."  (Boldface omitted.)  After summarizing the general rules applicable to vagueness challenges, Scott essentially repeats his argument that the SVPA inadequately defines the term " 'likely.' "  For the reasons set forth above, we disagree.

9

## III.
### DISPOSITION

The judgment is affirmed.

_____

Humes, J.

We concur:

_____

Ruvolo, P.J.

_____

Reardon, J.