[No. C060485. Third Dist. Nov. 2, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
DANIEL McROBERTS, Defendant and Appellant.

## COUNSEL

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Michael P. Farrell, Assistant Attorney General, Judy Kaida and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**NICHOLSON, J.**—Shortly before the scheduled parole date of defendant Daniel McRoberts, the district attorney filed a petition for his civil commitment as a person coming within the provisions of the Sexually Violent Predator Act, or SVPA (Welf. & Inst. Code, § 6600 et seq. [undesignated section references are to this code]). A jury sustained the petition. Following its denial of defendant's motion in arrest of judgment or for acquittal (which asserted his juvenile adjudication was not a qualifying offense under the SVPA because it was not sexually violent), the trial court ordered his commitment to Atascadero State Hospital for an indeterminate term of treatment and confinement.

On appeal, defendant renews his challenge to the status of his juvenile adjudication as a qualifying offense, contends the trial court abused its discretion in excluding the testimony of his lay witnesses, and argues that the court erred in refusing his request for an instruction requiring the jury to find

it was necessary to keep him in a secure facility for the protection of the health and safety of others. We affirm.

## FACTS

Defendant, born in August 1983, committed his first offense in May 1998. A girl whom defendant knew encountered him in her bedroom. He had items of her clothing, including a bra, in his backpack. The juvenile court placed defendant on probation for burglary. Five months later, defendant walked up to a nine-year-old girl on a playground, made a sexual remark, and penetrated her vagina with his finger. This time, the juvenile court found he had committed a sexual battery and ordered unspecified treatment.

In May 1999, defendant walked up to a 14-year-old girl whom he found attractive and brushed against her buttocks and vaginal area, leading to another finding that he had committed sexual battery. In September 1999, defendant was riding his bicycle on the way to a treatment session when he saw a 13-year-old girl standing near a soda machine on school grounds. He approached her and told her she was pretty, and then reached inside her shirt to fondle her breast. When he tried to do it a second time, she kicked or pushed him away. Calling her a bitch, he rode off. This time, the court found he had committed child molestation and ordered his placement in the (then named) California Youth Authority (CYA), where he participated in "pretty intensive treatment" for sex offenders until his release in 2004.

Two months after his release on parole, defendant was driving down the street and pulled up to a woman and her young child. As he purported to ask for directions, the woman noticed that he was masturbating. Making a vague threat about kidnapping the child, he drove off, still masturbating. He served a two-month jail term for indecent exposure. Ten days after his release from jail, defendant drove up to an 11-year-old girl who had just gotten off the school bus near her driveway. He got out of the car and offered her money for her underwear. When she retreated into her yard, he grabbed her hand. She either kicked him or fell backward, at which point defendant released her and drove off. He admitted his actions to his therapist, who contacted investigators. A jury found him guilty of attempted kidnapping and child molestation, and the court sentenced him to state prison for the term he was serving at the time of the filing of the present petition.[1]

---

[1] We affirmed his conviction in *People v. McRoberts* (Aug. 30 2007, C049624) (nonpub. opn.). The previous incidents, other than the burglary, were part of the evidence at trial.

Dr. Michael Musacco, the first psychologist who testified in support of the petition, initially diagnosed pedophilia and hebephilia, but ultimately concluded the age of the victims was not the stimulus driving defendant's behavior. Rather, he simply wanted victims he could demean, so the first psychologist believed defendant suffered from a nonspecific sexual deviance ("paraphilia") that had elements of sexual sadism. This condition would persist throughout his life even with treatment. The first psychologist believed that defendant presented a serious risk of reoffending if released to the community because of the numerous offenses he committed despite treatment and punishment that was increasingly more severe. He did not believe defendant was suitable for an outpatient treatment program because of this serious risk of reoffending.

Dr. Robert Owen, the second psychologist testifying in support of the petition, concurred in the diagnosis of a nonspecific sexual deviance. It was extremely significant that the deviance persisted despite treatment and custody, indicating highly deficient volitional control, for which reason defendant presented a substantial risk of reoffending. Because defendant had committed these offenses on release from custody, the second psychologist also concluded that he was not suitable for release into the community.

Dr. Robert Halon, the defense psychologist, who has a full-time forensic practice, asserted that the standard diagnostic manual contained a recognized error in its definitional criteria for paraphilia, which allowed psychologists to base this diagnosis only on observed behaviors without any evidence of underlying recurrent intense sexual fantasies and urges. As a result, he believed that there were repeated instances of psychologists testifying in support of SVPA petitions who diagnosed people improperly as sexually violent predators based solely on the existence of their criminal convictions. This practice was not commonly accepted in the psychiatric community. This group included the two SVPA psychologists in the present case.

In the opinion of the defense psychologist, defendant presented "a continuing danger" of impulsive, opportunistic, immature, and angry behavior,[2] acting out aggressively "in all kinds of ways, not just [sexually]," but this behavior did not have a basis in a mental disorder of recurrent sexually arousing fantasies and urges. It simply reflected antisocial attitudes compensating for a sense of inferiority.[3] The defense psychologist also did not find

---

[2] This included defendant's admission that in his early teens he surreptitiously touched or groped other people on at least 30 other occasions.

[3] According to the reports of the SVPA psychologists, defendant had been a socially isolated student who excelled in math and science and had been a target of his fellow students.

any evidence of sexual sadism. He had not seen any indication of defendant attempting to control this behavior. He believed the opinions of the SVPA psychologists simply pathologized defendant's criminal behavior without any evidence of a mental disorder.

Defendant expressed regret and shame for his past behavior. He could not explain why he exposed himself to the woman and her child after his release from CYA and his first outpatient treatment session or why, after his subsequent release from jail and two group sessions, he felt the need to startle or scare the girl whose underwear he had offered to buy. He believed the treatment he had received in CYA gave him the tools to help modify his behavior, and had stopped him from going any further with the girl. Now that he was four years older, he felt better equipped to deal with his feelings of inadequacy and anger, and he was committed to participating in continued treatment and complying with the registration requirements for sex offenders. He could count on the support of his extended family, and he had concrete plans for using his skills in math and science to start his own business in the electrical field.

## DISCUSSION

### I

The court instructed the jury that to prove defendant was a sexually violent predator, the People must establish beyond a reasonable doubt that "he has been convicted of committing a sexually violent offense against one or more victims." It then instructed, "A violation of Penal Code Section 288(a) is a sexually violent offense when the offense is committed on a child under 14 years old."

In his postverdict motion, defendant asserted there was insufficient evidence to support the finding that he had a qualifying conviction, because the People did not show that his juvenile adjudication for fondling the girl's breasts involved force, violence, duress, menace, or fear of bodily injury as required in section 6600, subdivisions (b) and (g)(2). The trial court, reading section 6600 together with section 6600.1, denied the motion.

Defendant parses through the amendments to sections 6600 and 6600.1 included in an initiative approved in the November 2006 general election, along with the electorate's intent (as expressed in the information guide supplied to voters), in concluding that section 6600.1 does not apply to juvenile adjudications, nor did the voters intend it to apply. He is incorrect.

Before the 2006 initiative amendments, former section 6600 provided in pertinent part, "(a)(1) 'Sexually violent predator' means a person who has been convicted of a sexually violent offense against *two or more* victims . . . . [¶] . . . [¶] (b) 'Sexually violent offense' means the following acts when committed by force, violence, duress, menace, fear of immediate and unlawful bodily injury on the victim or another person, or threatening to retaliate in the future against the victim or any other person . . . : a felony violation of Section . . . 288 . . . of the Penal Code . . . . [¶] . . . [¶] (g) *Notwithstanding any other provision of law* and for purposes of this section, *no more than one* prior juvenile adjudication of a sexually violent offense may constitute a prior conviction . . . if all of the following applies: [¶] . . . [¶] (2) The prior offense is a sexually violent offense as specified in subdivision (b). *Notwithstanding Section 6600.1, only an offense described in subdivision (b) shall constitute a sexually violent offense for purposes of this subdivision.*" (Stats. 2006, ch. 337, § 53, boldface and italics added.) At that time, former section 6600.1 deemed *any* of the offenses listed in section 6600 to be a " 'sexually violent offense' " if they involved " '[s]ubstantial sexual conduct' " with a child under the age of 14. (Stats. 1996, ch. 461, § 3, p. 2815.)

Among other changes not pertinent to the present case, the 2006 initiative amendment of section 6600 reduced the number of necessary convictions of a sexually violent offense to one (subd. (a)(1)), deleted the now moot limitation on use of only a single juvenile adjudication (subd. (g)), and also deleted the proviso we emphasized above from subdivision (g)(2).[4] Section 6600.1's amendment eliminated the requirement of substantial sexual conduct, and therefore deemed *any* offense to be sexually violent if it involved a child under the age of 14. The analysis submitted to the electorate in connection with the initiative stated, *"Change SVP Law.* This measure generally makes more sex offenders eligible for an SVP commitment. It does this by (1) reducing from two to one the number of prior victims of sexually violent offenses that qualify an offender for an SVP commitment and (2) making additional prior offenses—such as certain crimes committed by a person while a juvenile—'countable' for purposes of an SVP commitment." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) analysis of Prop. 83 by Legis. Analyst, p. 44; see *Arias v. Superior Court* (2009) 46 Cal.4th 969, 978–979 [95 Cal.Rptr.3d 588, 209 P.3d 923] [principles governing interpretation of legislative enactment apply to initiative; must ascertain intent first from words, then analysis and argument in official voter materials].)

---

[4] The 2006 amendment also added section 6600, subdivision (a)(2)(H), which included among qualifying convictions those in which a minor was tried as an adult but "committed to the Department of the Youth Authority" under section 1731.5. Although defendant adverts to this subdivision in his argument, it is irrelevant to the analysis because it involves criminal convictions.

Defendant argues that, notwithstanding the elimination of the proviso in section 6600, subdivision (g)(2) specifically proscribing the application of section 6600.1 to juvenile adjudications, the retention of "Notwithstanding any other provision of law" as subdivision (g)'s prefatory phrase has the effect of continuing this proscription. He contends section 6600.1 is a general provision, which the more specific subdivision (g) in section 6600 overrides, and any other interpretation would impermissibly render the prefatory proviso surplusage. He also purports to discern only a limited object in the initiative of making a single juvenile adjudication sufficient to invoke the SVPA, rather than broadening the types of adjudications that qualify.

As an initial matter, we do not believe that the prefatory proviso and the deleted proviso functioned in the same manner. The prefatory proviso is *inclusionary*: regardless of how some other statute might restrict the use of juvenile adjudications, they may qualify a person for treatment under the SVPA (subject to the criteria that follow). The deleted proviso, on the other hand, *excludes* any juvenile adjudications that do not involve the circumstances set out in subdivision (b) of section 6600. The prefatory proviso therefore cannot simply step into the shoes of the deleted proviso.

 Defendant's proffered harmonization, moreover, drains any meaning from the elimination of language specifically limiting the reach of section 6600.1, and we cannot deem a legislative deletion to be pointless any more than we can call a legislative addition surplusage (*Imperial Merchant Services, Inc. v. Hunt* (2009) 47 Cal.4th 381, 390 [97 Cal.Rptr.3d 464, 212 P.3d 736]; *Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299]). The language we quoted above from the analysis of the initiative indicates *both* an intent to reduce the number of qualifying offenses (whether criminal convictions or juvenile adjudications) to one *and* broaden the scope of the juvenile adjudications that qualify under the SVPA.

 Consequently, the trial court was correct in applying section 6600.1 to defendant's juvenile adjudication for child molestation. The People therefore satisfied this element of an SVPA commitment.

## II

Defendant sought to call three relatives and a lifelong family friend as lay witnesses. Rather than summarize the elements of the offer of proof as to each, we simply accept defendant's characterization in his brief on appeal of the overall purpose of these witnesses. "Counsel wanted to offer this evidence

to show that [defendant] was honest and would honor his promise not to get in trouble again. This evidence was also offered to show [his] good character, his plans for the future, and his intimacy with friends and family. The evidence was also offered to show [his] character for nonviolence and how he had changed and learned over the past nine years. This evidence was relevant to show that even if [he] had a disorder, he was amendable [*sic*] to outpatient treatment . . . ." (Record references omitted.)

The trial court noted that the "issue . . . is whether or not [defendant] is likely to reoffend. . . . [¶] I let the Defendant testify about himself because he can testify about his [own] mental state. . . . The problem with other people coming in is that they really can't testify about that. [¶] . . . I [do not] see [any] authority that character evidence is admissible in this type of a proceeding because the problem is the issue is likelihood. . . . [¶] There's no connection between the evidence that's being offered and that particular issue. There's no reason to believe it's probative on that particular issue. At best it is speculative . . . . [¶] The Court had earlier indicated that it may allow . . . some testimony by these people if there was evidence regarding amenability to treatment. There is no evidence regarding amenability to treatment. [¶] The Defendant may . . . have testified that he is willing . . . . But . . . there has to be some demonstration by evidence of amenability to out-patient treatment. [¶] The thrust of that is that, yes, there is a mental disorder, but the [Defendant] need not be held in a locked facility; he can be treated voluntarily, without restriction. The [Defendant] hasn't met that burden. [¶] The Court allowed evidence regarding his likelihood that he has testified about. But the Court just [does not find any] relative probative value to any other witness testifying on the subject matter for which it has been offered and for which the offer of proof has been made. [¶] Even if somehow it is relevant and not speculative, the time it would take to offer that evidence [an hour or two, according to defense counsel] for whatever slight probative value it might have simply is not warranted given the issues of this case as opposed to a criminal proceeding[]."

The trial court accurately assessed the situation. These lay witnesses could not counter the opinions of the SVPA experts on the psychological issue of whether defendant was likely to reoffend if released to the community for treatment. Their opinions otherwise only served to corroborate the validity of defendant's promises to seek and abide by treatment. However, defendant's *willingness* to avoid recidivism has very limited probative value. It is his *capacity* to do so that is the central concern. In our review of its ruling for an abuse of discretion, the trial court certainly did not err in finding there would

be an undue consumption of time that outweighed this minimal probative value.

## III

 Noting the Supreme Court's repeated assertions that a person's amenability to voluntary treatment is relevant to the issue of whether that person is likely to engage in sexually violent behavior (because the need for treatment and the need for custody are not coterminous concepts), *People v. Grassini* (2003) 113 Cal.App.4th 765, 776–778 [6 Cal.Rptr.3d 662], held that where there is evidence of a defendant's amenability to voluntary treatment, the court must instruct sua sponte "that [the jury] is to determine whether custody in a secure facility is necessary to ensure that the individual is not a danger to the health and safety of others." (*Id.* at p. 777, fn. omitted.)

Reflecting this holding, the fourth element in the pattern jury instruction on section 6600 provides that to sustain an allegation that a person is a sexually violent predator, the People must prove it "is necessary to keep [the person] in custody in a secure facility to ensure the health and safety of others." (CALCRIM No. 3454 (2008).) The notes to the instruction explain this element is necessary where there is evidence at trial on the issue of amenability to voluntary treatment in the community.

During the discussion of instructions, the trial court stated that it was omitting this element because "I don't think there is evidence that he has a sexual or mental disorder for which he may be treated voluntarily. The evidence is either he has a mental disorder that requires treatment in an institution, as testified to by the two People's experts, or he doesn't have a mental disorder at all, as testified to by the Defense expert. But there is no evidence that he has a mental disorder for which voluntary treatment would be appropriate." Defense counsel noted for the record his preference for the inclusion of the element. Defendant asserts on appeal that this was prejudicial error, because his own testimony that he wanted to enroll in outpatient treatment, had looked into two programs, had learned from prior treatment, and was remorseful for his past acts supported the element.

We disagree. As with the previous issue, the trial court's ruling accurately summarized the evidence in finding that it did not warrant the instruction. Defendant could testify only to his own willingness to participate in voluntary outpatient treatment. As with his lay witnesses, he was not competent to express an opinion on the psychological question of whether he was *capable* of being successfully treated in the community. Therefore, the trial court properly omitted this element of the instruction as lacking the necessary factual predicate.

## DISPOSITION

The order of civil commitment is affirmed.

Scotland, P. J., and Robie, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 3, 2010, S178189. George, C. J., did not participate therein.