Filed 6/20/25  P. v. McRoberts CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C100951 |
| Plaintiff and Respondent, | (Super. Ct. No. C159446) |
| v. | |
| DANIEL McROBERTS, | |
| Defendant and Appellant. | |

Appellant Daniel McRoberts, a sexually violent predator (SVP), challenges certain terms of his conditional release from civil commitment.  In the span of three pages, and with almost no citation to relevant authority, he contends several of the terms are invalid.  Because McRoberts fails to meet his burden of demonstrating error, we affirm the order overruling his objections.  Statutory references are to the Welfare and Institutions Code unless otherwise indicated.

1

FACTUAL AND PROCEDURAL BACKGROUND

McRoberts committed various sex offenses within a six-year period. (*People v. McRoberts* (2009) 178 Cal.App.4th 1249, 1252.) In 1998, he "walked up to a nine-year-old girl on a playground, made a sexual remark, and penetrated her vagina with his finger." (*Ibid.*) In 1999, he "walked up to a 14-year-old girl . . . he found attractive and brushed against her buttocks and vaginal area." (*Ibid.*) Later that year, he was "riding his bicycle . . . when he saw a 13-year-old girl standing near a soda machine on school grounds." (*Ibid.*) "He approached her and told her she was pretty[] and then reached inside her shirt to fondle her breast." (*Ibid.*) In 2004, two months after his release on parole for his last offense, he "was driving down the street and pulled up to a woman and her young child. As he purported to ask for directions, the woman noticed that he was masturbating. Making a vague threat about kidnapping the child, he drove off, still masturbating." (*Ibid.*) Ten days after his release from jail for indecent exposure, he "drove up to an 11-year-old girl who had just gotten off the school bus near her driveway. He got out of the car and offered her money for her underwear. When she retreated into her yard, he grabbed her hand." (*Ibid.*)

In November 2008, McRoberts was adjudicated an SVP under the Sexually Violent Predator Act (§ 6600 et seq.; the SVPA) and committed to the custody of the State Department of State Hospitals (the department). (*People v. McRoberts* (Feb. 25, 2015) [nonpub. opn.].) In 2017, he was conditionally released to a forensic conditional release program managed by Liberty Healthcare.[1] About two years later, he was recommitted to the department's custody after violating the terms of his release, including having sexual contact in a community college library.

---

[1] Liberty Healthcare is a for-profit company that contracts with the department to provide supervision and treatment services for SVPs conditionally released into the community.

In January 2022, McRoberts was again conditionally released. During this second release, he failed to promptly report contact with a potential minor during a community college class. He also had significant medical issues that required hospitalization. During the hospitalization, he made an inappropriate sexual comment to an attending female nurse. And he refused to sign a release of information that Liberty Healthcare claimed interfered with its ability to assist in coordinating his aftercare services. After his release from the hospital, he became increasingly uncooperative with Liberty Healthcare supervisory staff. His medical issues delayed some community reintegration efforts like employment and caused him to miss some individual and group treatments.

In February 2023, Liberty Healthcare requested revocation of McRoberts's outpatient status after he continued to demonstrate "an escalating pattern [of] significant risk relevant behaviors, lack of compliance with his terms and conditions, and problematic amenability to treatment and comportment of risk related behaviors." According to Liberty Healthcare, McRoberts's risk relevant behaviors included hypersexuality and sexualizing relationships, and his ongoing risk factors included "impulsive acts, negative emotionality/hostility, sex drive/preoccupation, sex as coping, deviant sexual interests, and cooperation with supervision." During polygraph testing, it was discovered that he (1) had engaged in multiple incidents of nonconsensual sexual behavior while on the phone with an adult female; (2) was masturbating to videos of topless women, (3) was using the women featured in ads from the mail and college flyers for masturbation; (4) thought about attractive women he saw on television and in stores and some nurses when he masturbated; and (5) watched high school beach volleyball on television and "thought about how sexy they were." In violation of his release terms, he did not properly disclose these incidents. He also used an electric bike without approval, traveled to inherently risky areas, and did not report this travel in his daily log. Liberty Healthcare considered the bike incident a reflection of poor judgment.

3

Overall, Liberty Healthcare concluded that his increase in sexual activity and lack of adherence to reporting requirements reflected an increase in risk relevant and dysregulated sexual behavior. Coupled with his impulsive acts, McRoberts was creating a heightened situation of risk that was difficult to manage. After considering this report, the court remanded McRoberts to the department's custody. (Pen. Code, § 1610.)

Seven months into that recommitment, McRoberts made some effort in identifying risky situations and potential risk factors, but his level of awareness remained underdeveloped. Also, his identification of strategies to effectively manage those risks in the community, while adhering to his release terms, was limited. A polygraph reflected his significant reactions to questions about transparency in his journaling of sexual thoughts and fantasies. Those reactions showed his ongoing difficulty with transparency in treatment and meaningful engagement in developing risk management strategies.

A few months later, Liberty Healthcare determined McRoberts was again suitable for conditional release after determining he had made progress in his journaling efforts and in identifying strategies to manage his risks. But Liberty Healthcare also stated that McRoberts would need to sign new terms individualized to him and that his success in outpatient treatment would weigh heavily on his compliance with those terms.

In February 2024, the court ordered McRoberts conditionally released for outpatient treatment. The order incorporated 49 terms that McRoberts initialed and signed, including the following: (1) McRoberts must comply with and actively participate in all treatment requirements and directives communicated by the program director (term 1); (2) McRoberts authorizes the release of confidential health information to the program director and other individuals or entities with information about his medical care or community integration (term 4); (3) any visitors to McRoberts's residence must be approved by the program director (term 7); (4) McRoberts will not use any legal medication, including any over-the counter medication without first discussing such usage with his designated physician and the program director (term 16);

4

(5) McRoberts will not smoke cigarettes, cigars, electronic cigarettes, vape, or use any other tobacco product (term 17); (6) McRoberts will comply with his prescribed medical treatment and medication when ordered by a licensed physician (term 20); (7) McRoberts will not possess firearms, ammunition, hunting knives, swords, spears, bondage devices, or other objects that could be reasonably used as a weapon (term 26); (8) McRoberts will not operate, purchase, or possess a motor vehicle without written authorization by the program director (term 32); (9) McRoberts will not possess a camera or any video or camera equipment without prior approval of the program director (term 33); and (10) McRoberts will consult with and obtain written authorization from the program director before making any major life decision (term 40).

In March 2024, McRoberts objected to 12 of the 49 terms. He also objected to a Liberty Healthcare document entitled "Initial Client Orientation and Agreement" (the initial agreement). Among other provisions, the initial agreement prohibits McRoberts from communicating with the media, contacting anyone without approval, and accessing the Internet without approval. McRoberts claimed that the initial agreement improperly imposed additional terms and conditions on his release without court approval. He also challenged the substance of certain of those terms and conditions.

At a hearing on the objections, the program director for Liberty Healthcare testified in support of the challenged terms. She testified that conditional release is the final module of treatment in which the individual applies what he's learned in the hospital to the new stressors he encounters in the community. The goal of this final module is risk management, integration in the community, and ultimately reaching readiness for unconditional release. When people first come out of the commitment environment, she explained, they are on an "intensive level of supervision or treatment" and are "gradually reintegrate[d] into the community" with the ultimate goal of independence. That integration is overseen by a "treatment team and representatives from the legal parties" to determine where the individual is in terms of managing the risks that increase the

5

likelihood of reoffending. Medical issues can increase those risks "because of stress, because of pain, [and] because of a number of different things." She reminded the court this was McRoberts's "third time out in the community" and explained that he had a "difficult time transitioning into the community" partly due to the acquisition of privileges too quickly and his inability to manage those privileges.

The trial court overruled McRoberts's objections. In its view, the SVPA gave Liberty Healthcare broad discretion to design rules and regulations to achieve the aims of conditional release and to protect the public. And for each term to which McRoberts objected, justification was provided. Also, term 1 allowed Liberty Healthcare to require compliance with the initial agreement.

McRoberts appeals. His appeal is limited to terms 4, 7, 16, 17, 20, 26, 32, 33, and 40 and the entirety of the initial agreement.

DISCUSSION

The SVPA provides for the involuntary civil commitment of certain convicted sex offenders. (*Price v. Superior Court* (2024) 105 Cal.App.5th 1210, 1213 (*Price*).) To be so committed, a judge or unanimous jury must find beyond a reasonable doubt that the person: (1) has been convicted of a sexually violent offense against one or more victims; and (2) has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely he or she will engage in sexually violent criminal behavior. (*Id*. at p. 1214; §§ 6604, 6600, subd. (a).) If that finding is made, the court must order the person committed to the department "for an intermediate term . . . for appropriate treatment and confinement in a secure facility." (§ 6604.)

The SVPA was not designed to be punitive. (*Price, supra*, 105 Cal.App.5th at p. 1214.) "Instead, it was 'designed " 'to provide "treatment" to mentally disordered individuals who cannot control sexually violent criminal behavior' " and to keep them confined until they no longer pose a threat to the public.' " (*Ibid*.) To that end, a person committed under the SVPA must have a current examination of his or her mental health

6

condition at least once per year.  (§ 6604.9, subd. (a).)  That examination must consider whether conditional release to a less restrictive alternative is in the best interest of the person and "conditions can be imposed that would adequately protect the community." (§ 6604.9, subd. (b).)

If the court determines that the committed person would not be a danger to others due to the committed person's diagnosed mental disorder while under the supervision and treatment in the community, the court must order the committed person placed with an appropriate forensic conditional release program operated by the state for one year. (§ 6608, subd. (g).)  After that year, the committed person may petition the court for unconditional discharge.  (§ 6608, subd. (m).)  The terms of conditional release must "be drafted to include reasonable flexibility to achieve the aims of conditional release, and to protect the public and the conditionally released person."  (§ 6608.8, subd. (b).)  A trial court may approve, modify, or reject the proposed terms if it finds they are not appropriate.  (§ 6609.1, subd. (c).)  The department generally cannot alter the terms without court approval.  (§ 6608.8, subd. (d)(1).)

The parties agree that SVP conditional release terms are subject to an abuse of discretion standard.  But they disagree on how to apply that standard.  McRoberts contends we should import the test articulated in *People v. Lent* (1975) 15 Cal.3d 481 that applies to probation and parole conditions, while the People contend we should affirm a term or condition unless the trial court's approval was "arbitrary or capricious or otherwise outside the bounds of reason."  We do not resolve this debate because McRoberts fails to meet his affirmative burden to show error.  (*People v. Mosqueda* (2023) 97 Cal.App.5th 399, 405.)

I

*Term 4*

Under term 4, McRoberts authorizes the program director and individuals and entities with relevant information about his medical care or community reintegration to

7

discuss and receive confidential health information as necessary to monitor his performance in the community. McRoberts objects, claiming there was no evidence his health condition played any role in his crimes. McRoberts is mistaken. In enacting the SVPA, the Legislature expressed " 'concern over a select group of criminal offenders who are extremely dangerous as the result of mental impairment.' " (*Needham v. Superior* Court (2024) 16 Cal.5th 333, 350.) McRoberts was committed after a jury found beyond a reasonable doubt that he has a diagnosed mental disorder and is likely to engage in sexually violent criminal behavior. Thus, his mental health was integral to his commitment and is equally integral to his conditional release from that commitment.

Citing a single case that considered whether a conservator could withhold treatment from a conscious conservatee (*Conservatorship of Wendland* (2001) 26 Cal.4th 519, 523), McRoberts also contends this term interferes with his right to make fundamental medical decisions and his right to privacy regarding his medical information. This contention is not adequately developed in at least three ways.

First, McRoberts does not explain how term 4, which relates to information-sharing, impacts his decision-making rights.

Second, he does not cite or analyze any case law regarding the right to privacy of medical information although abundant case law exists. (See *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 36-38 [establishing framework for privacy interest in medical information].)

And third, he does not address the program director's testimony as to the connection between an SVP's physical health and that person's risk or the evidence in the record demonstrating a connection between his hospitalization and his last conditional release. Because of his deficient analysis, we consider his contentions forfeited and see no reason to disturb this term. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

## II

### *Term 7*

Term 7 requires McRoberts to obtain program director approval for visitors to his residence. McRoberts contends this term is invalid because there is no evidence that any of his crimes were committed in his home. McRoberts's focus on his crimes is misplaced. The relevant issue is whether this is a valid term of his release from civil commitment as an SVP. The only other contention McRoberts makes regarding this term is that (1) it is overbroad because it does not allow family members to visit him and (2) it gives unbridled authority to the director to veto visitors without any standard. McRoberts cites no authority in support of these contentions. He broadly asserts that "[c]ases discussing terms and conditions of probation and parole . . . provide a close enough fit" to be of assistance, but he does not cite a single case in the probation or parole context that concerns regulation of home visitors or delegation to the probation or parole officer. For this reason, McRoberts's contentions are deficient and forfeited. (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894 [we may disregard conclusory arguments that are not supported by pertinent legal authority]; *Paglia & Associates Construction, Inc. v. Hamilton* (2023) 98 Cal.App.5th 318, 327 ["[i]t would be unfair for one side to loft an undeveloped legal idea, to rely on the court to work it out, and to leave the opposing party with nothing concrete to tackle in the briefing"].)

## III

### *Term 16*

Term 16 prohibits McRoberts from using "any legal medication (with or without a prescription), including any over-the-counter medication . . . , unless [he has] first discussed this usage with [his] designated physician and informed [the program director]." McRoberts contends this term, as applied to over-the-counter medication, is "overbroad in violation of [his] right to control basic health issues." But he does not cite or analyze any relevant authorities in support of that contention. As a result, McRoberts

9

does not meet his affirmative burden to show error.  (See *In re S.C.* (2006) 138 Cal.App.4th 396, 408 [to demonstrate error, appellant must present meaningful legal analysis supported by citations to authority].)

## IV

### *Term 17*

Term 17 prohibits McRoberts from vaping, smoking cigarettes, cigars, or electronic cigarettes, or using any other tobacco product while on conditional release.  He contends smoking has no relation to his crimes or the risk that he will commit a sex offense in the future.  But he does not address the relationship between smoking and the supervision that is integral to his conditional release.  This will be McRoberts's third attempt at conditional release in less than a decade.  The most recent attempt involved close supervision by Liberty Healthcare staff, including weekly visits and transportation to and from errands.  Indeed, as to relationship between smoking and the supervision integral to his conditional release, the People contend the vaping and smoking ban is necessary to protect those supervising him and to avoid McRoberts's developing a habit that he will need to break if he is returned to civil commitment.  McRoberts does not refute this relationship, and he does not substantively discuss this relationship in his reply brief when brought to his attention by the People.  By failing to respond substantively in the reply brief to the People's contention on this point, McRoberts impliedly concedes it. (*People v. Bagsby* (2024) 106 Cal.App.5th 1040, 1063; *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 90.)

## V

### *Term 20*

Term 20 requires McRoberts to comply with his prescribed medical treatment and medication when ordered by a licensed physician.  McRoberts contends this term is invalid for three reasons.  We reject all three.

First, he contends his medical condition played no role in the commission of the underlying crimes. McRoberts is mistaken. He ignores the direct connection between his medical condition and his status as an SVP.

Second, McRoberts repeats his challenge to term 4, contending that term 20 is "overbroad in violation of [his] due process right to privacy and control over his own medical decisions," citing *Conservatorship of Wendland, supra*, 26 Cal.4th 519. As in term 4, his contention lacks sufficient development for our review. (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A., supra*, 51 Cal.App.5th at p. 894 [we may disregard conclusory arguments that are not supported by pertinent legal authority].)

And third, he contends this term prevents him from refusing to take medication when he has a terminal condition and wishes to end his life. This scenario is not before us and is too speculative to warrant our review. (See *In re I.A.* (2011) 201 Cal.App.4th 1484, 1489 ["it is not within the function of the court to act upon or decide . . . a speculative, theoretical or abstract question or proposition"]; *In re G.B.* (2018) 24 Cal.App.5th 464, 470 [refusing to consider speculative concern regarding probation condition].)

VI

*Term 26*

Term 26 prohibits McRoberts from possessing firearms, ammunition, hunting knives, swords, spears, bondage devices, or "other objects that could reasonably be used as a weapon" unless authorized by the program director. McRoberts contends this condition should be revised to permit him to possess routine household items without approval. But he does not explain why such revision is necessary. He generally urges us to follow probation condition cases, but he fails to discuss any of those cases and how they dealt with similar limitations. (See, e.g., *In re Kevin F.* (2015) 239 Cal.App.4th 351, 357 [prohibition on possessing anything that probationer "could use as a weapon"], disapproved on other grounds in *People v. Hall* (2017) 2 Cal.5th 494; *In re R.P.* (2009)

11

176 Cal.App.4th 562, 567-568 [prohibiting possession of any dangerous or deadly weapon]; *People v. Forrest* (2015) 237 Cal.App.4th 1074, 1082 [prohibiting possession of any instrument used as a weapon]; *People v. Arevalo* (2018) 19 Cal.App.5th 652, 658 [we presume officer will not withhold approval for irrational or capricious reasons].) Appellate rules compel us to disregard McRoberts' deficient claim. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 146, 153.)

## VII

### *Term 32*

Term 32 prohibits McRoberts from operating, purchasing, or possessing a motor vehicle without written authorization from the program director. He contends this term should be amended to allow him to use the tractor that was on the property where he spent his last conditional release. According to the People, McRoberts improperly assumes he will be sent to the same property with the same tractor present. McRoberts does not respond in his reply brief to the People's contention. We treat his silence as a concession that his desire to use and his access to the same tractor is too speculative at this point. (*Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89-90; *In re I.A., supra*, 201 Cal.App.4th at p. 1489.) Also, based on McRoberts's history of driving or biking to find his victims and his unauthorized use of an electric bike during his last release, we find sufficient basis for this restriction.

## VIII

### *Term 33*

Term 33 prohibits McRoberts from possessing a camera without the program director's approval. McRoberts contends this term is invalid for two reasons: (1) it has nothing to do with his crimes; and (2) possession of a camera is not criminal conduct or reasonably related to future criminal conduct given the nature of his crimes. At the hearing, the People argued this term was necessary to ensure that "if somebody is granted the approval of taking pictures with their phone or other types of cameras that they're at a

place within their treatment to where [] they are able to safely manage this privilege." It was also necessary to ensure "we're not allowing devices that could be used to film potential victims or to participate in any other type of criminal or offense parallel-type behavior." Such "criminal or offense parallel-type behavior" is behavior that mimics the progress of behavior when [McRoberts] was offending, but it's not yet reached the point of offending yet.

The record supports the People's concern regarding giving McRoberts camera access without approval. This will be McRoberts's third attempt at conditional release. His most recent attempt failed after he engaged in "an escalating pattern of significant risk relevant behaviors," involving hypersexuality and impulsivity. In particular, he used the women featured in ads from the mail and college flyers for masturbation and thought about attractive women he saw on television and in stores when he masturbated. This activity raises sufficient concern that McRoberts's access to a camera should require approval.

IX

*Term 40*

Term 40 requires McRoberts to be "transparent with the [program director] . . . with all fiscal information in disclosing all incomes, purchases, and expenditures." It also requires McRoberts to "consult with and obtain written authorization from the [program director] . . . before making any major life decision including . . . entering into [a] marriage, divorce, or sexual relationship, [and] purchasing a home." McRoberts concedes that it is reasonable to require him to provide notice of these major decisions, but he insists that the decisions should remain his. McRoberts again fails to meet this affirmative burden of showing error. Although he generally refers to his constitutional liberty interest, he does not cite the federal or state constitution or any cases interpreting similar supervised release restrictions. (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A., supra*, 51 Cal.App.5th at p. 894.) He also does not establish or argue that this

13

condition cannot have "any valid application," which is required for his broader facial challenge to this condition. (*People v. Patton* (2019) 41 Cal.App.5th 934, 946; *People v. Kendrick* (2014) 226 Cal.App.4th 769, 778 [as-applied challenge invites a fact-driven inquiry].) Thus, we cannot conclude that the trial court erred in overruling McRoberts' objection to this condition.

X

*Initial Agreement*

McRoberts objects to the initial agreement claiming, "there is no evidence the trial court approved" this document. We disagree. The trial court considered the initial agreement, including McRoberts's substantive concerns with certain of its provisions, and approved it at the hearing on his objections.

DISPOSITION

The order overruling McRoberts's objections is affirmed.


                           /s/                        
                           MESIWALA, J.


We concur:


 /s/                        
EARL, P. J.


 /s/                        
FEINBERG, J.